# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| JAMES MITCHELL, ET AL. | : | CIVIL NO.  6:15-2506 |
|---|---|---|
| VS. | : | JUDGE DOHERTY |
| WAL-MART STORES, INC., ET AL | : | MAGISTRATE JUDGE HANNA |

## MEMORANDUM ORDER

Currently before the Court is the Motion for Leave to File a First Supplemental and Amending Complaint filed by plaintiffs, James and Katie Mitchell, individually and on behalf of their minor daughter, Candace Mitchell ("the Mitchells").  [rec. doc. 8].   By this Motion, the Mitchells seek leave to file an amended complaint naming Chris Arceneaux ("Arceneaux"), a Wal-Mart maintenance associate,  as a defendant. The defendants, Wal-Mart Louisiana, LLC and Wal-Mart Stores, Inc. ("Walmart") have filed opposition and supplemental opposition, to which the Mitchells have filed a Reply. [rec. docs. 10, 13 and 14]. A hearing on the Motion was held before the undersigned Magistrate Judge on January 26, 2016, and the Motion was taken under advisement.

## BACKGROUND

The Mitchells filed suit in the 15th Judicial District Court against Wal-Mart and a John Doe Wal-Mart employee on June 2, 2015, seeking damages for

personal injuries allegedly sustained by Candace Mitchell on June 22, 2014 in
Wal-Mart store # 531when she was struck in the face by a metal clothes rack
which was allegedly positioned in close proximity to the aisle and/or extending
into the aisle, causing her to fall backwards and strike her head on the floor.  At
the time of the alleged accident, Candace Mitchell was shopping with her
grandmother, Judy Schexnayder ("Schexnayder"), who is the manager of the New
Iberia Wal-Mart. [rec. doc. 14-2].  The Mitchells alleged that Wal-Mart and Wal-
Mart employee John Doe were responsible for the accident and alleged resulting
injuries based on principles of negligence and *respondeat superior* for positioning
the clothes rack in proximity to the aisle, "failing to warn . . . that the metal rack
was in such close proximity to and/or extending into the aisle creating an
unreasonably dangerous condition", failing to post signs about this condition, and
"failing to discover and/or correct the unreasonably dangerous condition." [rec.
doc. 1-1, ¶ 3-6].  The Mitchells expressly alleged that they intended to amend the
petition to name the John Doe employee "directly responsible for creating the
unreasonable dangerous condition" when Wal-Mart disclosed his identity. [*Id.* at ¶
4].

On October 9, 2015 Wal-Mart removed this action alleging diversity
jurisdiction as the basis for removal. [rec. doc. 1].  Prior to removal, on July 29,

2

2015, Wal-Mart provided the Mitchells with a surveillance video of the accident and several post-accident photographs. [rec. doc. 10-1]. After removal, on October 20, 2015, Wal-Mart submitted supplemental responses to the Mitchells' discovery disclosing the names of employees who were on duty at the time of the alleged accident, including Arceneaux. [rec. doc. 10-3]. The instant Motion was filed on November 5, 2015.

It is undisputed that Arceneaux and the Mitchells are Louisiana domiciliaries. Thus, amendment of Arceneaux as an additional defendant, will destroy diversity and divest this Court of subject matter jurisdiction. Without subject matter jurisdiction, 28 U.S.C. § 1447(e) mandates that the case be remanded to Louisiana state court.

In opposition to the proposed amendment, Wal-Mart alleges that plaintiffs should not be permitted to amend their Petition because the Mitchells have no reasonable basis for recovery in tort against Arceneaux given that the rack was placed on the sales floor in accordance with an "Apparel Execution Guide", a floor plan generated from the Wal-Mart home office, and no evidence allegedly demonstrates that the rack was improperly positioned, either too close to the aisle or protruding into the aisle, thereby alerting Arceneaux of an unreasonably dangerous condition. In support, Wal-Mart tenders its discovery responses, which include the store surveillance video and post-accident photographs, as well as the

affidavit of alleged manager of store #531, Wilmer Hill ("Hill"), who attests that he reviewed the store video and post-accident photographs to conclude that the metal clothes rack was "properly positioned" on the sales floor in accordance with Wal-Mart's "Apparel Execution Guide."

In response, the Mitchells submit the affidavit of Judy Schexnayder ("Schexnayder"), who was shopping with Candace Mitchell at the time of the accident and who is the manager of the New Iberia Wal-Mart.  Schexnayder attests that on the day of the accident she observed the metal clothes rack protruding into the aisle, with an insufficient amount of clothing hanging toward the interior of the rack, thereby exposing the outer portions of the rack, all in violation of Wal-Mart store policy.  She further attests that as a maintenance associate, it was Arceneaux's responsibility to observe, warn and/or remedy the hazard created by the clothes rack.  Moreover, Schexnayder alleges that she observed assistant store manager Schuyler Broussard move the clothes rack from where it had been positioned after Candace Mitchell's accident and the post-accident photographs of the rack are therefore not accurate representations of the position of the rack at the time of the accident.  She additionally states that Hill was not present on the date of Candace Mitchell's  accident and that he was not the manager of store #531 on that date.

## LAW AND ANALYSIS

Typically, amendments to pleadings are governed by Federal Rule of Civil Procedure 15(a).  That rule provides in pertinent part that leave to amend "shall be freely given when justice so requires."  FRCP 15(a).  However, in removed cases, pursuant to 28 U.S.C. §1447(e), a district court has discretion to either grant or deny an amendment of a complaint when subject matter jurisdiction is based on diversity and the plaintiff seeks to amend the complaint by adding a non-diverse party.  28 U.S.C. §1447(e); *Schindler v. Charles Schwab & Co., Inc.*, 2005 WL 1155862, *2  (E.D. La. 2005) *citing* §1447(e) and *Ascension Enterprises, Inc. v. Allied Signal, Inc.,* 969 F.Supp. 359, 360 (M.D. La. 1997);  *See also Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470, 476 (5th Cir. 2001) (indicating that § 1447(e) applies also to the identification of fictitious defendants after removal).

Thus, when faced with an amended pleading naming a non-diverse defendant in a removed case, federal courts should scrutinize that amendment more closely than an ordinary amendment.  *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).[1]  In such cases, resolving the question of whether to

---

[1]Although *Hensgens* was decided before Congress passed 28 U.S.C. § 1447(e), the Fifth Circuit has cited *Hensgens* with approval subsequent to the passage of §1447(e).  *See  Tillman v. CSX Transportation, Inc.*, 929 F.2d 1023, 1029 (5th Cir. 1991).  Moreover, district courts in the Fifth Circuit have consistently held that the *Hensgens* approach is still good law.  *See Schindler*, 2005 WL 1155862 at *2 fn.3 (and cases cited therein).  Further, the parties cite *Hensgens* as controlling the analysis of the resolution of this Motion.

permit an amendment which will destroy the subject matter jurisdiction of this court, justice requires that the district court balance the diverse defendant's interest in retaining the federal forum with the competing interests.  *Id.*

The Fifth Circuit has concluded that balancing those interests would not be served by a "rigid distinction of whether the proposed added party is an indispensable or permissive party" pursuant to the Federal Rules of Civil Procedure.  *Id.*; *See also Schindler*, 2005 WL 1155862 at *2 (citation omitted). Instead, in *Hensgens* the Fifth Circuit set forth four factors that district courts should consider when deciding whether to allow post-removal amendment and joinder of non-diverse defendants:  (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities.  *Id*. at 1182; *Tillman v. CSX Transportation, Inc*., 929 F.2d 1023, fn. 11 (5th Cir. 1991). The district court should then balance the equities and decide whether amendment

---

Finally,  "[t]he fraudulent joinder doctrine does not apply to joinders that occur after an action is removed." *Penny Realty Inc. v. Southwest Capitol Services, Inc*., 2008 WL 2169437, at fn. 3 (W.D. La. 2008) *quoting Cobb v. Delta Exports, Inc*., 186 F.3d 675, 677 (5th Cir. 1999);  *Laborde v. Traedwell Restaurants of Louisiana, LLC*, 2013 WL 1452024, *2 (W.D. La. 2013) *citing Cobb*, 186 F.3d at 677. Although the plaintiffs named "John Doe" in their original petition,  fictitious "John Doe" parties are not real parties in interest and their presence in the lawsuit is ignored and does not destroy a diverse defendant's right to remove the case to federal court.  Federal Courts therefore do not determine whether a "John Doe" is fraudulently joined.  *Maxwell v. IASIS Glenwood Regional Medical Center*, 2015 WL 2452431, *2 (W.D. La. 2015).

6

should be permitted.  *Id*.  If amendment of a non-diverse defendant is permitted, the case must be remanded to the state court; if amendment is not allowed, the federal court maintains jurisdiction.  *Id.*;  *see also* 28 U.S.C. §1447(e).

With respect to the first *Hensgens* factor, in analyzing whether the purpose of amendment is to destroy diversity, courts consider "whether the proposed amendment presents a valid cause of action." *Parish Disposal Industries, LLC v. BFI Waste Services, LLC,* 2014 WL 2207870,*5 (W.D. La. 2014) *citing Mallery v. Becker*, 2014 WL 60327 at *2 (W.D. La. 2014) *citing Tillman*, 929 F.2d at 1029 and *Kling Realty Co., Inc. v. Texaco*, 2007 WL 4553611 (W.D. La. 2007). If the amendment presents a valid claim, "it is unlikely that the primary purpose of [the amendment] is to destroy diversity jurisdiction." *Id. citing Schindler*, 2005 WL 1155862 at *3 (E.D. La. 2005) (internal citations omitted); *Penny Realty Inc. v. Southwest Capitol Services, Inc*., 2008 WL 2169437, *2 (W.D. La. 2008).

Under Louisiana law, a cause of action exists under Civil Code article 2315 for negligence against a person responsible for causing injuries to another.  "A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." La. R.S. 9:2800.6(A);

7

*Mundy v. Department of Health and Human Resources,* 620 So.2d 811, 813–814 (La. 1993) (citations omitted).  Furthermore, a merchant "is required to discover any unreasonably dangerous conditions on the premises and correct the condition or warn potential victims of its existence."  *Laborde v. Traedwell Restaurants of Louisiana, LLC*, 2013 WL 1452024, *3 (W.D. La. 2013) *quoting Hutchison v. Knights of Columbus, Council No. 5747*, 847 So.2d 665, 668 (La. App. 4th Cir. 2003), *affirmed,* 866 So.2d 228 (La. 2004) (citation omitted).

Generally, "an agent, officer or employee of a corporation may owe a duty to a third person which duty is a result of his employment relationship." *Walker v. Schwegmann Giant Supermarkets, Inc.*, 671 So.2d 983, 986 (La. App. 4th Cir. 1996) *citing Holmes v. Great Atlantic & Pacific Tea Co.*, 587 So.2d 750, 752 (La. App. 4th Cir. 1991), *writ denied*, 592 So.2d 412 (La. 1992) *citing Canter v. Koehring Co.*, 283 So.2d 716 (La.1973). "That is, duties imposed on him by his employer, the breach of which causes injury to a third person, supports a cause of action against the employee." *Id.*

In this case, the allegations in the petition and proposed amended petition as well as the evidence presented by the Mitchells in support of this Motion, if proven at trial, would be sufficient to hold Arceneaux personally liable to the Mitchells.  The Mitchells allege personal failures to perform specific duties

allegedly imposed on him by Wal-Mart, the breach of which allegedly caused or contributed to Candace Mitchell's accident and alleged resulting injuries. While Arceneaux may not have been responsible for the general location of the clothes rack on the sales floor as argued by Wal-Mart, the Mitchells allege that he was responsible for failing to observe, warn and/or remedy the hazard created by an alleged improperly positioned clothes rack which allegedly extended or protruded into the aisle.  It is reasonable to assume that Arceneaux, a maintenance associate, would be required by Wal-Mart to observe, warn and/or remedy any hazard he encountered on or near the aisles.  Moreover, the Mitchells have presented evidence which supports a finding that Arceneaux was, in fact, responsible for observing, warning and/or remedying the hazard allegedly created by the clothes rack. [*See* rec. doc. 14-2, affidavit of Judy Schexnayder[2]].  The Court finds that

---

[2]During oral argument, defense counsel questioned the competency of the affidavits submitted by the Mitchells as it appeared that the signature of the notary had been affixed by stamp, rather than by hand written signature.  The Court instructed plaintiffs' counsel to determine if the affidavits had indeed been stamped. In response to the Court's inquiry, the notary, Cle Simon, submitted a letter dated January 26, 2016, in which Simon states that his signature had been affixed on the affidavits by him using his custom  signature stamp, in the presence of each affiant, after he placed each affiant under oath, and after witnessing each affiant sign her affidavit. Simon further provided the Court with legal authority which authorizes the use of a custom signature stamp in lieu of a hand written signature –  Black's Law Dictionary Fifth Edition (providing that a "signature may be written by hand, printed, stamped, typewritten, engraved, photographed, or cut from one instrument and attached to another . . . it being immaterial with what kind of instrument a signature is made."); *Rainey v. Entergy Gulf States, Inc*., 35 So.3d 215, 225-226 (La. 2010) (affirming that "[i]n the absence of a statute prescribing the method of affixing a signature, it may be written by hand, printed, stamped, typewritten, engraved, or by various other means."); UCC § 3-401 ("a signature may be made (i) manually or by means of a device or machine. . . ). Pursuant to this authority, it appears that the Court may consider the plaintiffs' affidavits. The ruling on this Motion is the same, however, even if the affidavits are not considered.

Louisiana law therefore provides a cause of action against Arceneaux.

Wal-Mart suggests that this Court determine the merits of the plaintiffs' lawsuit against both it and Arceneaux on the basis of its poor quality store surveillance video in which the clothes rack is partially obscured by a hanging banner, and post-accident photographs, to find that the clothes rack did not protrude into the aisle and hence, there was no unreasonably dangerous condition. To the extent that these items may be considered in the context of this Motion[3], at this juncture, this Court is not asked to determine the merits of the Mitchells' cause of action, but rather, the Court's task is solely to evaluate whether the Mitchells have a valid "colorable" claim against Arceneaux, which under the facts and evidence presented, the Court finds they do. *See Laborde*, 2013 WL 1452024 at *4-5. Indeed, under similar facts, the Mitchells have demonstrated that Judge Doherty, to whom this case is assigned, has reached the same conclusion, albeit in an unpublished decision. [rec. doc. 14-1, *Raphael Campbell, Jr., et al v. Lowe's Home Centers, Inc*., No. 6:98-cv-2051, rec. doc. 33 (W.D. La. 5/5/1999)].

Courts also look to "whether the plaintiff[ ] knew or should have known the

---

[3]At oral argument, plaintiffs' counsel argued that the video and photographs were not self-authenticating, and in the absence of an affidavit authenticating these items, they could not be considered. The Court need not address this issue as the ruling on this Motion is the same whether these items are, or are not, considered.

identity of the non-diverse defendant when the state court complaint was filed."
*Penny Realty Inc*,  2008 WL 2169437, *2 *citing Schindler*, 2005 WL 1155862 at
*3.  A showing that the addition of a non-diverse defendant was contemplated
prior to removal, suggests the purpose of the amendment is not to destroy
diversity.  *Penny Realty,* 2008 WL 2169437 at *2 *citing Schindler*, 2005 WL
1155862 at *3.   In this case, the plaintiffs clearly contemplated naming
Arceneaux as a defendant in this action as soon as his identity was discovered.
Indeed, the plaintiffs are not seeking to add Arceneaux as a new defendant, but
instead, are seeking to substitute Arceneaux, for the fictitious, unknown John Doe
defendant, who was included in the original petition for damages. This weighs in
favor of allowing the amendment.  *See Laborde*, 2013 WL 1452024 at *4 *citing
Ellender v. Rite Aid Pharmacy*, 2008 WL 4200716, *2 (W.D. La. 2008).

For the reasons set forth above, the first *Hensgens* factor weighs in favor of
permitting amendment.

Wal-Mart does not contest the Mitchells diligence in seeking to amend their
petition to add Arceneaux.  Indeed, the motio for leave to amend their petition was
brought approximately only two weeks after discovering Arceneaux's identity.
The second *Hensgens* factor, whether plaintiff has been dilatory in asking for
amendment, also weighs in favor of permitting amendment.

The third *Hensgens* factor, whether the plaintiffs would be significantly injured by denying amendment, weighs slightly in favor of denying amendment. Although the Court has found that the Mitchells have a cause of action against Arceneaux, the reality is that Wal-Mart, if found liable under the doctrine of *respondeat superior*, would bear financial responsibility as Arceneaux's employer. The Mitchells therefore could fully recover from Wal-Mart for any negligence of its employee, Arceneaux.  Regardless of who will actually bear financial responsibility should the defendants be found liable, this Court finds that the Mitchells should not be denied the opportunity to bring suit against a potentially liable party.  Denial of leave to amend would deny the Mitchells that opportunity. While courts differ on whether leave to amend should be granted under these circumstances, the Mitchells have demonstrated that under similar facts, Judge Doherty, like the undersigned, has held that leave should be granted. [rec. doc. 14-1, *Raphael Campbell, Jr., et al v. Lowe's Home Centers, Inc*., No. 6:98-cv-2051, rec. doc. 33 (W.D. La. 5/5/1999)].

Finally, there are other equitable factors bearing on this Court's decision, most notably, the lack of legal prejudice which may be suffered by Wal-Mart should amendment be permitted.  While it is true that Wal-Mart will suffer some prejudice because it will lose access to a federal forum, the issues presented in this

case are entirely a matter of Louisiana state law, which the Louisiana state court is more than capable and competent to determine.  Furthermore, there has been no substantive Motions filed in this case, nor has there been a substantial amount of discovery, and the discovery already conducted in this suit, will not be wasted; instead, it may simply be used in the state court proceeding after remand. Moreover, should Wal-Mart prevail on a substantive Motion resulting in dismissal of Arceneaux, they may be able to again remove the action to this federal court. For these reasons, the fourth *Hensgens* factor, other factors bearing on the equities, also weighs in favor of permitting amendment.  Finally, if leave to amend were denied, and the Mitchells wished to pursue their claim against Arceneaux, they would have to bear the burden of maintaining parallel lawsuits arising out of the same set of facts in both state and federal courts.

## CONCLUSION

For the above reasons, under the facts presented herein, the Court finds that the equities tilt the balance of factors toward permitting the Mitchells to amend their petition to add Arceneaux.  Although the Court acknowledges that this may cause Wal-Mart some prejudice, the Court is nevertheless convinced that the better course is to have all potentially liable parties before the same court.  Further, "[t]he fact that one factor might weigh in favor of denying the amendment is not

dispositive of this Court's inquiry because the remaining factors weigh in favor of permitting the amendment." *Schindler*, 2005 WL 1155862 at *4.   Accordingly;

**IT IS ORDERED** that the Mitchells' Motion for Leave  to file a Supplemental and Amending Complaint [rec. doc. 8] is **granted.** Accordingly, the **Clerk shall** file the plaintiffs' Supplemental and Amending Complaint into the record.

Because the amendment destroys this Court's diversity jurisdiction, **IT IS FURTHER ORDERED** that the **Clerk** Remand this lawsuit to pursuant to 28 U.S.C. §1447(e).

This Order shall be **STAYED** for fourteen days from the date of issuance. Any appeal to the District Judge must be filed within fourteen days from the date of this Order.  If an appeal is taken to the District Judge, the Order shall remain stayed until the appeal is decided.  If no timely appeal is filed, the Clerk shall remand the action forthwith.

Signed this 4th day of February, 2016, at Lafayette, Louisiana.

_____

**PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE**